```
IN RE:                            )
                                  ) Civil Action
     STINGFREE TECHNOLOGIES        ) No. 09-cv-01119
     COMPANY                       )
                                  )
STINGFREE TECHNOLOGIES COMPANY,   ) BKY NO. 08-16232(bif)
                                  )
               Appellant           )
                                  )
          vs.                      )
                                  )
AMERIC INVESTMENTS CAPITAL        )
  COMPANY;                         )
VI CAPITAL COMPANY;                )
LISA VITO; and                     )
ROBERT A. VITO,                    )
                                  )
               Appellees           )
                                  )
FONIKA VENTURES, LLC,              )
                                  )
               Movant              )
```

                         *    *    *


APPEARANCES:

          ALBERT A. CIARDI, JR., ESQUIRE
               On behalf of Appellant

          GRETCHEN M. SANTAMOUR, ESQUIRE
               On behalf of Appellees

          GENE M. LINKMEYER, ESQUIRE
               On behalf of Movant


                         *    *    *

O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

This matter is before the court on the Notice of Appeal dated February 16, 2009 by debtor-appellant StingFree Technologies Company ("StingFree"), by which StingFree appeals the February 4, 2009 Order and accompanying Memorandum of United States Bankruptcy Judge Bruce Fox ("Memorandum") dismissing StingFree's Chapter 11 bankruptcy proceeding.[1]

Also before the court is the Motion of Fonika Ventures, LLC to Intervene, which motion was filed June 17, 2009.[2]

On January 12, 2010, I heard oral argument on the entire matter, including the motion to intervene, and took the matter under advisement.[3] Hence this Opinion. For the reasons articulated below, I deny Fonika's motion to intervene, and I affirm the Order of the bankruptcy court.

---

[1]    On April 17, 2009, the Brief of Appellant, StingFree Technologies Company was filed. On May 1, 2009, the Brief of Appellees, Robert and Lisa Vito, VI Capital Company, Americ Investments was filed.

[2]    On June 23, 2009, Appellant's Response to Motion to Intervene was filed, indicating that appellant StingFree has no objection to Fonika's motion to intervene in this action. On July 1, 2009, appellees filed their Memorandum of Law in Opposition to the Motion of Fonika Ventures, LLC to Intervene.

[3]    At the January 12, 2010 argument, I first heard oral argument on the motion to intervene, and took the matter under advisement. I then conducted oral argument on the merits of the bankruptcy appeal, permitting Fonika to argue on the merits. However, I advised the parties that I would consider Fonika's argument on the merits only if I were ultimately grant the motion to intervene. (See Notes of Testimony of the oral argument conducted on January 12, 2010 before me in Allentown, Pennsylvania, styled "Hearing Before the Honorable James Knoll Gardner[,] United States District Judge" ("N.T."), at pages 26-27.)

<u>JURISDICTION</u>

This Court has subject matter jurisdiction over this bankruptcy appeal pursuant to 28 U.S.C. § 158(a)(1).

<u>FACTS AND PROCEDURAL HISTORY</u>

The facts and procedural history herein are gleaned from the February 4, 2009 Order and accompanying Memorandum of the bankruptcy court, the record of this matter, and, to the extent they are in agreement, the briefs of the parties.[4]

Appellee Robert Vito previously served as president, chief executive officer, and chairman of the Board of StingFree, a Pennsylvania corporation which owned and developed patents for technology designed to reduce or absorb undesirable shock vibrations when using golf clubs. The company was originally formed by Dr. Thomas Fallone and Dr. Carmen DiMario as Pendulum Corp.

In June 2001, Drs. Fallone and DiMario formed a new Pennsylvania corporation called Inner Core, which purchased the patent rights held by Pendulum, changed the name in 2003 to Stingfree, and renamed the corporation in 2005 as StingFree

---

[4]     My recitation of the facts of this case largely reflects the bankruptcy court's findings of fact set forth in its February 4, 2009 Memorandum. As noted below in footnote 12, appellant's brief does not dispute any specific factual findings of the bankruptcy court which underlie its determination that the bankruptcy petition was filed in bad faith. Moreover, appellees do not dispute any of the bankruptcy court's factual findings.

Technologies.[5]  StingFree operated from a basement office at the

home of Mr. Vito and his wife, Lisa Vito (appellees "the Vitos").

The Vitos charged StingFree rent.[6]

StingFree hired an accountant, Christopher Nawn, CPA,

to review its books and records.  Mr. Nawn issued a report in

January 2008 based on his review of limited corporate records.

Also in January 2008, StingFree replaced Mr. Vito with Richard

Rudinger as its chief executive officer and board chairman.

Litigation ensued, involving Mr. Vito, StingFree, Mr. Rudinger,

and StingFree director Dr. Thomas Fallone.

Ultimately, the Vitos and StingFree entered into a

"Stock Redemption, Separation and Settlement Agreement"

("Settlement Agreement") dated February 29, 2008.[7]  The

bankruptcy court summarized the Settlement Agreement, in part, as

follows.[8]

> This agreement provided for the Vitos to sell
> 68,219,000 shares of Stingfree stock titled in
> their names (and to transfer 6,460,000 options to
> purchase stock) to Stingfree for $3,900,000, plus
> the assumption by Stingfree of certain corporate

---

[5]    The spelling of appellant's corporate name is inconsistent in the
record.  The bankruptcy court refers to appellant as "Stingfree".  The parties
refer to it as "StingFree", as I do in this Opinion.

[6]    Memorandum, pages 2-3.

[7]    Memorandum, pages 3-4.  The Stock Redemption, Separation and
Settlement Agreement appears in the Record on Appeal of this matter as Exhibit
L to Exhibit 9 (Exhibit 9 is the amended complaint filed in the adversary
action).

[8]    Neither party disputes the accuracy of the bankruptcy court's
summary of the Settlement Agreement.

debts payable, or otherwise guaranteed, by the
Vitos. The Vitos received a promissory note in
this amount, with payments to be made at three
stated intervals over roughly a 25-month period,
from February 29th. The first payment of
$1 million was due by May 19, 2008. The
promissory note contained a confession of judgment
provision.

The Settlement Agreement also provided that
Mr. Vito would resign immediately as Stingfree's
president; a June 2006 employment agreement
between Stingfree and Mr. Vito was terminated
immediately; and Mr. Vito agreed not to compete
with Stingfree for 12 months and to keep
confidential corporate information. Furthermore,
the two pending lawsuits involving Stingfree and
the Vitos were to be withdrawn. A mutual release
attached to the settlement agreement was signed
that included all claims "in law or equity which
the Releasors ever had, [or] now have...."

The settlement agreement also recited that
Stingfree was the sole owner of its patents.
However, as security for promised payments from
the corporation, the Vitos received a pledge of
the stock being sold to the corporation as well as
a "first lien security interest in the patents
held by the Company on the date hereof," along
with an assignment of patent rights.[9]

The Vitos also promised to return all property

belonging to StingFree including, but not limited to, all

corporate records, including "corporate accounting records,

corporate bank account statements, [and] corporate

correspondence".[10]

---

[9]    Memorandum, pages 4-5 (internal citations omitted).

[10]    Settlement Agreement, section IV.B.

The Settlement Agreement included a mandatory arbitration clause, which provided, in part, that "[a]ny controversies or disputes arising out of or relating to this Agreement shall be resolved by binding arbitration in accordance with the then current Commercial Arbitration Rules of the American Arbitration Association."[11]

Additionally, the Settlement Agreement contained a section titled "Default", which provided, in part, that "A default under the terms of any of the Transaction Agreements shall be considered a default under all such agreements. All defaults, except monetary defaults, are curable, and if not so cured shall be resolved according to the Dispute Resolution Section herein."[12]

The bankruptcy court found that Mr. Vito delivered certain boxes of records and materials that Mr. Rudinger found deficient, and that digital copies of corporate financial records had been altered since their original entries. The bankruptcy court further found that StingFree refrained from seeking further investors "because it considered the corporation's financial records unauditable...and because recent tax returns had not been filed for the debtor."[13]

---

[11]    Settlement Agreement, section VII.B.

[12]    Settlement Agreement, section VIII.A.

[13]    Memorandum, page 10 (internal citations omitted).

The bankruptcy court found that on March 28, 2008, StingFree sent the Vitos a notice of default under the terms of the Settlement Agreement. The Vitos responded that they had cured any alleged defaults, which StingFree rejected, and sent their own notices to StingFree when they did not receive their $1 million payment by the extended deadline of May 31, 2008. Thereafter, the Vitos confessed judgment against StingFree in Pennsylvania state court in the amount of $4.11 million, and recorded that judgment in California and possibly Maryland.[14]

The bankruptcy court further found that, as part of the Settlement Agreement, the Vitos recorded the patent assignment obtained with the United States Patent Office on July 9, 2008, and have been attempting to market and license those patents.[15]

StingFree filed a petition to strike the Vitos' confessed judgment in Pennsylvania state court and sought, unsuccessfully, in state court to enjoin the Vitos from using the patents, pending the outcome of its petition to strike the confessed judgment. As part of its petition, StingFree asserted that the Vitos' claims against them were subject to arbitration.[16]

---

[14]    Memorandum, pages 10-11.

[15]    Memorandum, page 11.

[16]    Id.

StingFree filed a Chapter 11 bankruptcy petition on September 25, 2008, just prior to a hearing on StingFree's state court petition to strike the confessed judgment.  The bankruptcy court found that, at the time of its bankruptcy filing, StingFree was conducting business and had only two part-time employees, neither of whom was being paid.  At the time, StingFree had two directors, one of whom has since resigned.[17]

The bankruptcy court notes that StingFree stated in its post-bankruptcy "Small Business Statement of Operations" that it has received no income nor made any disbursements since the bankruptcy filing; that its bankruptcy schedules disclose no real property; and that StingFree leases no business location.  Its assets included one outstanding receivable at the time of the bankruptcy filing, in the amount of $60,000; a bank deposit of $4,810; unknown value for licensing agreements with Lamkin Corporation; unknown value for its alleged claims against the Vitos; and a valuation of $300,000 for the patents, trademarks and other intellectual property rights.[18]

In August 2008, Mr. Rudinger decided to attempt to sell the patent rights and communicated with an attorney, who formed Fonika Ventures, LLC as a vehicle to purchase StingFree's

---

[17]    Memorandum, pages 11-12.

[18]    According to the bankruptcy court, Mr. Vito opined that the patents were worth more than $3.9 million and that the patents now belong to the Vitos.  Moreover, the bankruptcy court notes that the Vitos still assert they are owed more than $4 million by StingFree.  (Memorandum, pages 11-12.)

intellectual property and negotiated a purchase price of
$300,000. The bankruptcy court found that two of Fonika's
members are Dr. DiMario and Dr. Fallone, as well as a few other
StingFree shareholders, but that the majority membership
interests in Fonika are not owned by StingFree's shareholders.[19]

The bankruptcy court further found that StingFree's
patent valuation of $300,000 is based on the September 23, 2008
sales agreement between Fonika and StingFree, and not on an
appraisal of the patent rights. Moreover, the bankruptcy court
notes that the sales agreement expressly contemplates that
StingFree would file a bankruptcy petition and obtain the
bankruptcy court's approval to sell the patent rights free and
clear of all claims, interests and liens.[20]

The bankruptcy court also made the following findings:
(1) Fonika has offered employment to Mr. Rudinger and
Dr. DiMario, in the event Fonika successfully purchases the
patents; (2) upon the sale of the patents, StingFree intends to
use the sale proceeds to fund litigation against the Vitos rather
than to continue operations; (3) StingFree lacks sufficient funds
to engage counsel in filing bankruptcy; and (4) StingFree used a

---

[19]    Memorandum, page 12-13.

[20]    Memorandum, page 13.

$35,000 down payment from Fonika to retain counsel and pay the requisite bankruptcy filing fees.[21]

The bankruptcy court further found that, within a week of filing its bankruptcy petition, StingFree filed a motion to approve the sale of substantially all of its assets (the patent rights) to Fonika, as well as a motion to approve bidding procedures.  On October 17, 2008, less than one month after the filing of the bankruptcy petition, StingFree filed a complaint against the Vitos, docketed as Adv. No. 08-0290 (the "adversary action"), and the complaint was soon amended.

The thirteen-count amended complaint in the adversary action alleges, inter alia, that as president and chief executive officer of StingFree, Mr. Vito diverted StingFree revenues and capital investments for his own benefit; obtained company stock improperly and without board of director authorization; failed to provide full and complete company records after his removal as controlling officer in January 2008; and falsified company records.[22]

The amended complaint alleges that StingFree entered into the Settlement Agreement "without knowledge of the full extent of Robert Vito's fraud and in reliance on representations made by the Vitos regarding the management and financial

---

[21]     Memorandum, page 13.

[22]     Memorandum, pages 14-15.

operations of the company, that would later prove to be false."[23]
It further alleges that the Vitos breached the settlement
agreement by failing to provide all of StingFree's books,
records, inventory and supplies; that the Vitos "secretly
modified" the Settlement Agreement after it had been presented to
StingFree for execution; and that Mr. Vito had destroyed company
records.[24]

The amended complaint in the adversary action asserts
two federal bankruptcy-related claims and eleven claims under
Pennsylvania state law.[25]

## Bankruptcy Court Decision

By its February 4, 2009 Order and Memorandum, the
bankruptcy court dismissed StingFree's Chapter 11 bankruptcy
petition and denied as moot StingFree's motion to approve bidding
procedures in connection with its proposed sale of its patents.
Specifically, the bankruptcy court found that StingFree's

---

[23]     Amended Complaint, paragraph 131.

[24]     Amended Complaint, paragraphs 134, 136, 144, 158.

[25]     Memorandum, pages 15-17. The amended complaint includes federal
claims for "preferential transfer" under 11 U.S.C. § 547, "fraudulent
transfer" under 11 U.S.C. § 548, and "turnover" under 11 U.S.C. § 542(e).
However, the bankruptcy court treated the "turnover" claim as a state-law
claim because it is alleged in the context of a breach of contract claim.
(Memorandum, page 29 n.18.)  Neither party disputes this characterization.
Thus, I have characterized the amended complaint as including only two federal
bankruptcy-related claims.

petition had not been filed in good faith as implicitly required by 11 U.S.C. § 1112(b)(1).[26]

In support of this conclusion, the bankruptcy court found that the petition was not filed to serve a valid bankruptcy purpose, but rather to gain a tactical advantage in litigation. In particular, the bankruptcy court concluded that the petition was not filed to preserve any going-concern value of StingFree because StingFree intended to liquidate its assets, is not presently an operating entity, and has no intention of resuming operations.

Moreover, the bankruptcy court concluded that StingFree's state-law claims could have been raised without the necessity of filing any bankruptcy petition, and noted that some of them already had been raised in state court. In addition, it concluded that the state-law claims fell within the scope of the mandatory arbitration provision of the Settlement Agreement.

---

[26] Title 11 United States Code, Section 1112(b)(1) provides, in part:

[O]n request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

Both United States Bankruptcy Judge Bruce Fox in this case, and other courts interpreting § 1112(b)(1), have interchangeably described the statute as requiring the bankruptcy petition to be filed in good faith, or as requiring the petition not to be filed in bad faith. Accordingly, I use the "in good faith"/"not in bad faith" terminology interchangeably in this Opinion as well.

Although StingFree contended that the Vitos had waived the contractual arbitration provision, the bankruptcy court determined that StingFree had not met its burden of establishing that a waiver had occurred.  Also the court concluded that, to the extent StingFree may suffer any prejudice if arbitration were compelled, such prejudice would be insufficient to overcome the federal preference for enforcement of contractual arbitration provisison.

Thus, the bankruptcy court concluded that many of StingFree's claims in the adversary action, which action "serves as the centerpiece" of StingFree's bankruptcy case, cannot be heard in bankruptcy court.[27]

Regarding StingFree's federal bankruptcy-related claims for preference and fraudulent conveyance, the bankruptcy court noted that those claims would not be arbitrable because they are created by the Bankruptcy Code and are to be prosecuted by a bankruptcy fiduciary.  The bankruptcy court concluded that those two claims were unlikely to succeed on the merits.

Thus -- having concluded that StingFree was not a "going concern" entity; had virtually no employees, no operations, minimal tangible assets aside from the patent rights, which appeared to have been assigned to the Vitos; and had state-law claims which must be arbitrated -- Judge Fox determined

---

[27]    Memorandum, page 34.

that permitting StingFree's bankruptcy filing to continue for the sole purpose of litigating two bankruptcy-related claims with doubtful likelihood of success on the merits, would achieve no valid bankruptcy purpose.[28]

Therefore, the bankruptcy court dismissed StingFree's Chapter 11 bankruptcy petition for cause under 11 U.S.C. § 1112(b)(1) as having been filed in bad faith, and denied as moot StingFree's motion to approve bidding procedures. This appeal followed.

<u>MOTION TO INTERVENE</u>

Initially, I address the Motion of Fonika Ventures, LLC to Intervene. Fonika moves, pursuant to Rule 24 of the Federal Rules of Civil Procedure, to intervene in this appellate action as a matter of right or, alternatively, to intervene permissively, for the purpose of supporting appellant StingFree's appeal.

On September 23, 2008, Fonika and StingFree executed an Asset Purchase Agreement. The agreement provided that Fonika would purchase, among other things, all of StingFree's intellectual property and related contracts. If it acquired those assets, Fonika intended to employ Richard Rudinger, StingFree's chief executive office and board chairman, and Dr. Carmen DiMario, a StingFree shareholder.

---

[28]     Memorandum, page 35.

The Federal Rules of Civil Procedure provide for two types of intervention: intervention as of right, and permissive intervention. Specifically, Rule 24 provides, in pertinent part:

> (a) **Intervention of Right.** On timely motion, the court must permit anyone to intervene who:
>
> > . . .
> >
> > (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
>
> (b) **Permissive Intervention.**
>
> > (1) ***In general.*** On timely motion, the court may permit anyone to intervene who:
> >
> > > . . .
> > >
> > > (B) has a claim or defense that shares with the main action a common question of law or fact.

Fed.R.Civ.P. 24.

Fonika contends that it is entitled to intervene under either standard set forth in Rule 24. I consider both types of intervention in turn, and for the following reasons, I conclude that Fonika is not entitled to intervene under either standard.

<u>Intervention as of Right</u>

Intervention as of right requires an applicant to establish all of the following: (1) the application is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation. <u>Harris v. Pernsley</u>, 820 F.2d 595, 596 (3d Cir. 1987).

The party seeking to intervene bears the burden of establishing all four requirements. <u>United States v. Alcan Aluminum, Inc.</u>, 25 F.3d 1174, 1181 n.9 (3d Cir. 1994). However, "a very strong showing that one of the requirements is met may result in requiring a lesser showing of another requirement." <u>Harris</u>, 820 F.2d at 596 n.6.

Appellees contend that Fonika cannot satisfy any of the four requirements for intervention as of right. As noted above, on June 23, 2009, appellant responded to the motion to intervene, indicating it does not oppose the motion. I therefore address each element on the merits.

First, regarding timeliness of the application, Fonika contends that its motion to intervene is timely because it was filed early in the litigation, and therefore permitting intervention would not prejudice appellant StingFree or cause

undue delay.  Appellees aver that the motion is untimely because it was filed June 17, 2009, forty-seven days after the close of briefing in this matter, without explanation for the delay.[29] Moreover, appellees assert that granting such an untimely request to intervene would cause prejudice to appellees because it would require further briefing.

Timeliness of a motion to intervene is determined from all of the circumstances of the case, and the determination is within the discretion of the court.  <u>NAACP v. New York</u>, 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648, 662-663 (1973).  Whether intervention of right or permissive intervention is sought, the application must be timely.  If intervention is untimely, it must be denied.  <u>NAACP</u>, 413 U.S. at 365, 93 S.Ct. at 2602-2603, 37 L.Ed.2d at 662.  However, "where a party takes reasonable steps to protect its interest, its application should not fail on timeliness grounds."  <u>Alcan</u>, 25 F.3d at 1182.

Courts in this circuit consider three factors for determining whether an application to intervene is timely: (1) the stage of the proceeding, (2) the prejudice that delay may cause to the parties, and (3) the reason for the delay.  <u>Mountain Top Condominium Association v. Dave Stabbert Master Builder, Inc.</u>, 72 F.3d 361, 369 (3d Cir. 1995).

---

[29]    Appellant filed its appellate brief on April 17, 2009 and appellees filed their appellate brief on May 1, 2009.

Considering these three factors, I conclude that Fonika's motion is timely. Although the parties had already submitted their appellate briefs at the time the motion was filed, no merits determinations had been made, and the parties had not appeared for any court proceedings in this appellate action. Appellees cite no legal authority for the proposition that, in an appellate matter such as this, a motion to intervene filed less than two months after the close of appellate briefing is untimely filed.[30]

Moreover, I conclude that no party would be prejudiced by Fonika's intervention. Appellees' brief contends that they would be prejudiced because such intervention would require further briefing, thus causing expense and delayed disposition of the appeal. However, Fonika's motion to intervene contains its proposed appellate brief, which is attached to the motion as Exhibit B, thus limiting the extent to which additional briefing would delay disposition of this action.

Further, at oral argument, I permitted all parties, including Fonika, to argue on the merits of the appeal pending disposition of the motion to intervene, thus providing appellees

---

[30]     Appellees aver that Fonika's interests are aligned with appellant StingFree, and therefore Fonika should have filed its motion to intervene no later than contemporaneously with StingFree's April 17, 2009 brief.  In support of this contention, appellees cite "Cf. Fed.R.App.P. 29(e)(stating parties submitting appellate briefs in the nature of *amicus curiae* must file within seven days of the filing date for the party being supported.)".  However, appellees offer no authority or legal analysis for the proposition that a motion to intervene for the purpose of supporting a bankruptcy appeal is analogous to the filing of an *amicus* brief by a non-party.

with an opportunity to respond orally to Fonika's proposed brief.
Therefore, I conclude that appellees did have an opportunity to
respond to Fonika's argument without incurring considerable
expense and without delaying disposition of this action.

In addition, although Fonika has not explained the
nearly four-month delay from the February 16, 2009 filing of this
appeal and the June 17, 2009 filing of Fonika's motion to
intervene, that delay is not unreasonable in light of the
procedural posture of the case.  Thus, I conclude that Fonika's
motion is timely.

Regarding the second and third <u>Harris</u> factors,  Fonika
contends that it has an interest in the "property or transaction"
which is the subject of this appeal (for purposes of the second
factor), namely, it seeks to bid on appellant StingFree's assets.

In addition, Fonika contends that its interest could be
impaired if this appeal were decided without Fonika's
participation (the third factor).  <u>See</u> Fed.R.Civ.P. 24(a)(2).
Attached to Fonika's motion to intervene is the September 23,
2008 Asset Purchase Agreement between Fonika and StingFree,
whereby Fonika would purchase, among other things, all of
StingFree's intellectual property and related contracts.[31]

Appellees aver that Fonika and StingFree can pursue the
sale of patents through other avenues, for example through

---

[31]     Fonika's motion, Exhibit A, section 2.1.

alternative dispute resolution or in state court, and need not pursue that matter through bankruptcy. Thus, according to appellees, Fonika's claims will not be sufficiently impaired by disposition of this appeal.

I conclude that, for purposes of the second <u>Harris</u> factor, Fonika has established a sufficient interest in the litigation, that is, an interest relating to the property or transaction from which this appeal arises, specifically, an interest in purchasing some of StingFree's assets. However, Fonika has not established the third <u>Harris</u> factor, <u>i.e.</u>, that its interest "may be affected or impaired, as a practical matter by the disposition of the action". <u>Harris</u>, 820 F.2d at 596.

On this factor, Fonika's brief in support of its motion to intervene offers only the conclusory remark that "Fonika's interest in purchasing the assets of debtor could be impaired and prejudiced by the disposition of this appellate process if the matter was decided without Fonika's participation."[32] Because Fonika fails to identify any ways in which its interest is impaired by this action, I cannot conclude that Fonika has satisfied the third <u>Harris</u> factor.

---

[32] Fonika's brief, page 4. In the context of the third <u>Harris</u> factor, Fonika further remarks that "debtor has indicated that it has no objection to Fonika intervening in this action." However, it fails to explain the relevance of StingFree's lack of opposition as applied to the issue of whether Fonika's interest may be affected or impaired by disposition of this matter.

Finally, regarding the fourth <u>Harris</u> factor, I conclude that Fonika has failed to establish that its rights are not adequately protected by an existing party to this litigation. When a party seeking intervention has the same "ultimate objective" as a party to the suit, "a presumption arises that its interests are adequately represented.  To overcome the presumption of adequate representation, the proposed intervenor must ordinarily demonstrate adversity of interest, collusion, or nonfeasance on the part of the party to the suit."  <u>In re Community Bank of Northern Virginia</u>, 418 F.3d 277, 315 (3d Cir. 2005).

A review of Fonika's proposed appellate brief, as compared with StingFree's appellate brief, reveals that Fonika's position is substantively identical to a portion of StingFree's position.  Both argue that the bankruptcy court erred in dismissing StingFree's Chapter 11 bankruptcy proceeding on the basis that StingFree wanted to liquidate its assets, rather than reorganize.

Both Fonika and StingFree contend, on the merits of this appeal, that StingFree should have been permitted to pursue liquidation of its assets via Chapter 11 bankruptcy.  Moreover, as Fonika's brief in support of its motion to intervene points

out, "both entities desire to carry out the terms under the parties['] Asset Purchase Agreement."[33]

Thus, I conclude that for purposes of this action, StingFree shares Fonika's "ultimate objective", that is, reversal of the bankruptcy court's dismissal of StingFree's Chapter 11 bankruptcy such that StingFree may liquidate its assets in that context. This gives rise to a presumption of adequate representation. In re Community Bank of Northern Virginia, 418 at 315. Fonika, as proposed intervenor, has not demonstrated any "adversity of interest, collusion, or nonfeasance" on the part of StingFree. Thus, I conclude that Fonika has not satisfied the fourth Harris factor.

Accordingly, because proposed intervenor Fonika has not established that its interest in this litigation may be affected or impaired by disposition of this action and has not established that StingFree does not adequately represent Fonika's interest, I conclude that Fonika is not entitled to intervene as of right.

Permissive Intervention

_____ "[D]enial of intervention as of right does not automatically mandate a denial of permissive intervention." Hoots v. Commonwealth of Pennsylvania, 672 F.2d 1133 (3d Cir. 1982). In exercising its discretion, "the court must consider whether the intervention will unduly delay or prejudice the

---

[33]    Fonika's brief, page 4.

adjudication of the original parties' rights." Fed.R.Civ.P.
24(b)(3). Moreover, the court may consider whether the
applicant's contributions to the proceedings would be
superfluous. See Hoots, 672 F.2d at 1136.

As noted above, I have concluded that Fonika's motion
to intervene is timely and that permitting its intervention would
not unduly delay or prejudice the original parties' rights.
However, as I concluded in my discussion of the fourth Harris
factor, Fonika's interests are adequately represented by
StingFree because they share the same objective and because
StingFree has already put forth the same arguments which Fonika
seeks to make in this action. Therefore, I conclude that
permitting Fonika to intervene in this appeal would be unhelpful
to its disposition because it would be superfluous. See Hoots,
672 F.2d at 1136.

Accordingly, in the exercise of my discretion, I
decline to grant Fonika's request for permissive intervention,
and deny the motion to intervene in its entirety. Therefore I do
not consider Fonika's proposed appellate brief in my disposition
of StingFree's appeal.

<u>APPEAL OF BANKRUPTCY DISMISSAL</u>

Appellant StingFree appeals an Order entered
February 4, 2009 by United States Bankruptcy Judge Bruce Fox
which dismissed StingFree's Chapter 11 bankruptcy case pursuant
to 11 U.S.C. § 1112(b) because it was filed in bad faith, and

which denied as moot StingFree's motion to approve bidding
procedures.

## Contentions of the Parties

### *Contentions of Appellant*[34]

Appellant StingFree advances two arguments in support
of its appeal of the bankruptcy court's February 4, 2009 Order
and Memorandum.  First, appellant contends that the bankruptcy
court erred in dismissing the bankruptcy proceeding for cause
because appellees failed to establish by a preponderance of the
evidence that cause or bad faith exists which would warrant such
dismissal.  Second, appellant asserts that the bankruptcy court
erred in concluding that appellant's state-law claims set forth
in the adversary action fall within the scope of the mandatory
arbitration provision of the parties' settlement agreement.

Regarding its first argument, appellant avers that
appellees failed to prove by a preponderance of the evidence that
the bankruptcy case was not commenced in good faith.  Appellant
further asserts that its plans to liquidate do not weigh in favor

---

[34]     Although appellant's brief contains section headings which aver
that the bankruptcy court erred, the text of the arguments set forth therein
simply restate, verbatim, some of the arguments set forth in appellant's Post
Trial Brief dated December 31, 2008 and, presumably, filed in the bankruptcy
court that date.  (Record, Exhibit 5.)  Because the Post Trial Brief pre-dates
the February 4, 2009 decision of the bankruptcy court, the analysis contained
verbatim in both briefs necessarily does not specifically address the court's
decision.

Thus, appellant StingFree's appellate brief offers no new legal
discussion, and other than asserting that the bankruptcy court erred, does not
specifically address the bankruptcy court's findings and conclusions.
Moreover, appellant does not address the applicable standard of review.

of dismissal of the bankruptcy because liquidation would maximize StingFree's value.

Regarding its second argument, appellant contends that although the Settlement Agreement includes a mandatory arbitration provision, each of the parties has waived its right to arbitrate this dispute.  Appellant StingFree avers that it expressly waives that right, and that the Vitos have waived the right to arbitrate by "substantially invoking" the litigation machinery, specifically, by confessing judgment against appellant to enforce the Settlement Agreement.

Moreover, appellant asserts that the parties did not agree to arbitrate a claim for fraudulent transfer or any issues arising under Article 9 of the Uniform Commercial Code ("U.C.C."), because those claims arose after the alleged breach of the Settlement Agreement.  Thus, appellant avers that its fraudulent transfer and U.C.C. claims are within the bankruptcy court's jurisdiction.

*Contentions of Appellees*

Appellees contend that the bankruptcy court correctly found that, based on the totality of the circumstances, appellant's bankruptcy petition was filed in bad faith and thus the court did not abuse its discretion in dismissing the petition.  Appellees assert that the record supports the bankruptcy court's conclusion that the petition was not filed to

preserve going-concern value of StingFree, based on testimony that StingFree is not an operating entity and does not intend to resume its operations.

Moreover, appellees assert that the record supports the conclusion that the chief aim of appellant's petition was to continue litigation against Mr. Vito, rather than to serve a valid bankruptcy purpose. Appellees further contends that StingFree's proposed sale of assets to Fonika at a value which underestimates the value of the intellectual property weighs in favor of a conclusion that the bankruptcy petition was filed in bad faith.

In addition, appellees respond that the bankruptcy court correctly held that appellant was unlikely to prevail on its bankruptcy-related claims for preference and fraudulent conveyance, and therefore the bankruptcy court had no reason to retain jurisdiction over the parties' remaining arbitrable state-law claims. Specifically, appellees contend that the bankruptcy court correctly concluded that appellant could not satisfy the elements of its fraudulent conveyance claim under the Bankruptcy Code. Appellees therefore assert that, having concluded that the bankruptcy petition was filed in bad faith and no bankruptcy-related claims would succeed, the bankruptcy court did not abuse its discretion in dismissing appellant's bankruptcy case in its entirety.

Regarding appellant's second argument, appellees respond that the bankruptcy court correctly concluded that the arbitration provision in the Settlement Agreement controls appellant's state-law claims against the Vitos. Specifically, appellees contend that under the terms of the Settlement Agreement, the arbitration provision applies only to non-monetary defaults, and all of the Vitos' obligations under the Settlement Agreement were non-monetary in nature. Thus, appellees contend that all of appellant's claims against the Vitos are within the scope of the arbitration provision.

Appellees further aver that appellant has not demonstrated that the Vitos waived their rights to arbitration of appellant's state-law claims for several reasons. First, appellees contend that by confessing judgment against StingFree, the Vitos exercised their contractually prescribed remedies under the Settlement Agreement. That is, appellees assert that the Settlement Agreement specifically provides for confession of judgment, and that under the Settlement Agreement, the Vitos are not required to arbitrate monetary defaults; and that even if they were required to seek arbitration, the automatic bankruptcy stay would have prevented them from doing so.

Second, appellees aver that they raised the arbitration provision as early as a November 12, 2008 hearing before the bankruptcy court. Third, appellees aver that appellant has not

been prejudiced by appellees' failure to demand arbitration prior to the November 12, 2008 hearing, and that appellant has identified no such prejudice.

Standard of Review

The legal determinations of a bankruptcy court are reviewed de novo. The bankruptcy court's factual determinations are reviewed under the clearly erroneous standard. <u>Sovereign Bank v. Schwab</u>, 414 F.3d 450, 452 n.3 (3d Cir. 2005)(internal citations omitted).

The decision to dismiss a Chapter 11 petition is reviewed for abuse of discretion. <u>In re SGL Carbon Corporation</u>, 200 F.3d 154, 159 (3d Cir. 1999); <u>see also</u> <u>In re Camden Ordnance Co. of Arkansas, Inc.</u>, 245 B.R. 794, 797 (E.D.Pa. 2000) (Brody, J.).

"Discretion will be found to have been abused only when 'the judicial action is arbitrary, fanciful or unreasonable which is another way of saying that discretion is abused only where no reasonable [person] would take the view adopted by the trial court.'" <u>In re Camden Ordnance</u>, 245 B.R. at 797.

Discussion

*Bad Faith*

A Chapter 11 bankruptcy petition is subject to dismissal for "cause" under 11 U.S.C. § 1112(b) unless it is filed in good faith. <u>In re SGL Carbon Corporation</u>, 200 F.3d at

-28-

161. "Once at issue, the burden falls upon the bankruptcy petitioner to establish that the petition has been filed in 'good faith'." Id. at 162.

Whether bad faith actually exists in a particular case is a question of fact. In re SB Properties, Inc., 185 B.R. 198, 204 (E.D.Pa. 1995)(Padova, J.). Determining whether a petition has been filed in good faith is a fact-intensive inquiry, and the court considers the totality of the circumstances. In re SGL Carbon Corporation, 200 F.3d at 162.

Two of the basic purposes of Chapter 11 are "preserving going concerns" and "maximizing property available to satisfy creditors". In re Integrated Telecom Express, Inc., 384 F.3d 108, 119 (3d Cir. 2004)(quoting Bank of America National Savings Association v. 203 North LaSalle Street Partnership, 526 U.S. 424, 453, 119 S.Ct. 1311, 1421, 143 L.Ed.2d 607, 622 (1999).

Accordingly, two inquiries are particularly relevant to the question of good faith: "(1) whether the petition serves a valid bankruptcy purpose, e.g., by preserving a going concern or maximizing the value of the debtor's estate, and (2) whether the petition is filed merely to obtain a tactical litigation advantage." In re Integrated Telecom Express, 384 F.3d at 119-120.

As the bankruptcy court correctly noted, courts consider many factors, including the following non-exhaustive list, when determining whether to dismiss for bad faith:

> (1) the debtor has few or no unsecured creditors; (2) there has been a previous bankruptcy petition by the debtor or a related entity; (3) the prepetition conduct of the debtor has been improper; (4) the petition effectively allows the debtor to evade court orders; (5) there are few debts to non-moving creditors; (6) the petition was filed on the eve of foreclosure; (7) the foreclosed property is the sole or major asset of the debtor; (8) the debtor has no ongoing business or employees; (9) there is no possibility of reorganization; (10) the debtor's income is not sufficient to operate; (11) there was no pressure from non-moving creditors; (12) reorganization essentially involves the resolution of a two-party dispute; (13) a corporate debtor was formed and received title to its major assets immediately before the petition; and (14) the debtor filed solely to create the automatic stay.

In re SB Properties, Inc., 185 B.R. at 205.

However, courts should "guard against any impulse to overemphasize any one factor", and "any conceivable list of factors cannot be exhaustive."  Id. at 205 n.5 (citing, inter alia, Carolin Corporation v. Miller, 72 B.R. 693, 701 (4th Cir. 1989)).

In this case, appellant StingFree erroneously asserts that appellees bear the burden of proving that cause or bad faith exists which warrants dismissal of StingFree's bankruptcy petition.  On the contrary, in the Third Circuit, as noted above, once the issue of good faith has been raised, the burden is on

the bankruptcy petitioner to establish that the petition has been filed in good faith. In re SGL Carbon Corporation, 200 F.3d at 162.

StingFree's appellate brief cites nothing specific in the record before the bankruptcy court which establishes that StingFree's bankruptcy petition was filed in good faith. It avers, without citation to the record, that "the Debtor took every action necessary to preserve the dwindling assets of the company in the name of the creditors and avoid subjecting those assets to further harassing litigation."[35]

---

[35] Appellant's brief, pages 15-16. Appellant's brief also states as follows:

> The alleged bad faith of the Debtor was enumerated as follows:
>
> > (a) failure to disclose license agreements with the companies on Debtor's schedule;
> >
> > (b) payment of salaries pre-petition to officers; and
> >
> > (c) lack of unsecured debt
>
> None of these were proven by the Vitos. The alleged license agreements had no monetary value whatsoever as the company could not move forward with no certified financials and constant legal attacks by Mr. Vito. Mr. Rudinger testified further that they became worthless after Mr. Vito increased his terror campaign against the Debtor by calling and threatening anyone doing business with the Debtor. All of the salaries were disclosed and explained by Mr. Rudinger and the Debtor still cannot determine how this issue bears on the Motion to Dismiss. Finally, Mr. Vito offered no competent evidence on a lack of creditors.

(Appellant's brief, page 16.)

Appellant cites no court document or transcript in support of any of these allegations. Presumably, appellant is referring to arguments made by appellees in their motion before the bankruptcy court to dismiss appellant's

(Footnote 35 continued):

Moreover, the totality of the circumstances support the bankruptcy court's factual findings that StingFree's petition was not filed in good faith.  Appellant does not dispute any of the bankruptcy court's factual findings which underlie its ultimate finding that the petition was not filed in good faith.  In particular, appellant does not dispute the bankruptcy court's finding that StingFree does not intend to reorganize but rather intends to liquidate its assets.

Specifically, the bankruptcy court found that, based on the evidence presented, appellant StingFree

> is an entity without current operations, virtually no employees or tangible assets, and which filed its bankruptcy petition on the eve of a state court hearing involving its chief adversary.  It proposes to reorganize by selling assets it encumbered prepetition, with the sale to an entity formed just prior to the bankruptcy filing and that funded the bankruptcy petition to date, and with little or no marketing.  Moreover, the assets to be sold - viz., patent rights - may now be owned by individuals asserting to be the debtor's largest creditors.[36]

_____

(Continuation of footnote 35):

bankruptcy petition.  Because appellant fails to identify the source of these contentions, and fails to cite any of its claims to the record, I am unable to evaluate their relevance or merit.  See E.D.Pa.R.Civ.Pa. 7.1(c).

Moreover, these contentions are indicative of appellant's mistaken belief that appellees bear the burden of proving that StingFree's bankruptcy petition was filed in bad faith.  To whatever extent these contentions may be relevant, they do not, on their own, satisfy StingFree's burden of establishing that its petition was filed in good faith.  See In re SGL Carbon Corporation, 200 F.3d at 162.

[36]     Memorandum, page 39.

Thus, the bankruptcy court concluded that "the primary activity of this chapter 11 case is for the debtor to litigate against its former chief executive officer (and spouse) to recover those patent rights".  Id.

Appellant cites nothing in the record which would support a conclusion that the facts found by the bankruptcy court are clearly erroneous.  Further, appellant offers no reason to set aside the bankruptcy court's factual findings other than its argument that a debtor may maintain a Chapter 11 petition even though it seeks to liquidate its assets rather than reorganize.

Appellant correctly contends that liquidation of assets may be an appropriate use of Chapter 11 bankruptcy, because the Bankruptcy Code contemplates liquidating plans under 11 U.S.C. § 1123(b)(4), whereby a debtor may develop a Chapter 11 plan to sell of all of its assets.  In re PPI Enterprises (U.S.), Inc., 324 F.3d 197, 211 (3d Cir. 2003.)

However, like reorganization plans, "liquidation plans...must serve a valid bankruptcy purpose.  That is, they must either preserve some going concern value, e.g., by liquidating a company as a whole or in such a way as to preserve some of the company's goodwill, or by maximizing the value of the debtor's estate."  In re Integrated Telecom Express, Inc., 384 F.3d at 120 n.4.  "To say that liquidation under Chapter 11 maximizes the value of an entity is to say that there is some

value that otherwise would be lost outside of bankruptcy."  Id.
at 120.

Appellant suggests that its liquidation plan would have
the effect of maximizing its value because its sale "is part of
the Debtor's plan to generate enough capital to aggressively
pursue its claims against Robert and Lisa Vito as well as Gibson
& Perkins, P.C.".  Appellant avers that "This strategy hopes to
achieve the best, and only, change for positive return to
shareholders as the only alternative was a failure and winding
down of the company."[37]

This averment supports the bankruptcy court's
conclusion that the primary purpose of the bankruptcy case is for
StingFree to litigate against the Vitos.  Moreover, appellant
cites no authority to support its assertion that liquidation in
order to generate capital to fund litigation is a valid
bankruptcy purpose, and fails to articulate any way in which
liquidation under Chapter 11 in this case would protect or create
any value that would "otherwise be lost outside of bankruptcy".
In re Integrated Telecom Express, Inc., 384 F.3d at 120.

Accordingly, the bankruptcy court did not err in
concluding that StingFree's plan to liquidate its assets in order
to fund litigation against the Vitos supports a finding that the
Chapter 11 bankruptcy petition was not filed in good faith.

---

[37]    Appellant's brief, page 18.

*Adversary Action*

Having concluded that StingFree's Chapter 11 petition was not filed to preserve any going-concern value, the bankruptcy court acknowledged appellant's contention that it may liquidate its assets through Chapter 11. However, the bankruptcy court essentially concluded that there is no reason to continue the bankruptcy proceeding solely for the purpose of adjudicating the claims raised in the adversary action.

Specifically, the bankruptcy court concluded that appellant's state-law claims set forth in the adversary action could have been raised without filing a bankruptcy petition (and, indeed, that some claims had been raised in state court), and that the state-law claims fall within the scope of the mandatory arbitration provision set forth in the Settlement Agreement.[38]

Moreover, the bankruptcy court determined that appellant's two bankruptcy-related claims for preference and fraudulent conveyance were unlikely to succeed on the merits.[39] Therefore, it concluded that StingFree's likelihood of prevailing on those claims was "sufficiently doubtful so that continuation of this chapter 11 case simply to litigate such claims is

---

[38]    Memorandum, pages 29-30.

[39]    Memorandum, pages 35-39.

inappropriate."[40]  As discussed below, appellant does not dispute
this conclusion.

Appellant argues that the Vitos have waived any right
to arbitrate because they have "invoked the litigation machinery"
by confessing judgment against StingFree in state court.[41]
However, appellant fails to identify any specific way in which
the bankruptcy court's factual findings regarding waiver are
clearly erroneous or how his decision to dismiss the petition
constitute an abuse of discretion.  On the contrary, appellant
simply restates its arguments as presented to the bankruptcy
court.  Moreover, I conclude that the bankruptcy court correctly
concluded that appellees have not waived any right to arbitration
under the Settlement Agreement.

As the bankruptcy court articulated, "[c]onsistent with
the strong preference for arbitration in federal courts, waiver
'is not to be lightly inferred.'"  PaineWebber Inc. v. Faragalli,
61 F.3d 1063, 1068 (3d Cir. 1995).  The evidentiary burden is on
the party asserting that such a waiver has occurred.  See Great
Western Mortgage Corporation v. Peacock, 110 F.3d 222, 233

---

[40]     Memorandum, page 39.

[41]     Appellant's brief avers that the bankruptcy court erred in
concluding that the state-law claims "fall within the scope of the mandatory
arbitration provision of the settlement agreement."  (Appellant's brief,
page 18.)  However, the entirety of appellant's argument on this issue
addresses the extent to which the parties have waived their right to
arbitrate, and does not offer any legal analysis regarding the scope of the
settlement agreement.  See E.D.Pa.R.Civ.P. 7.1(c).  Therefore, I address the
issue of the arbitration clause only to the extent that appellant argues that
it has been waived.

(3d Cir. 1997).  Moreover, "a party waives the right to compel arbitration only in the following circumstances: when the parties have engaged in a lengthy course of litigation, when extensive discovery has occurred, and when prejudice to the party resisting arbitration can be shown."  Id.

Here, the bankruptcy court concluded that appellant had not met its burden of showing prejudice which would suffice to override the federal preference for arbitration.  Specifically, the bankruptcy court stated:

> Here, the only evidence presented was that the Vitos confessed judgment against Stingfree in Pennsylvania state court two or three months prior to the debtor's bankruptcy proceeding, and that Stingfree had filed a petition in state court seeking to strike that confessed judgment based, in part, upon mandatory arbitration.  Thereafter, resolution of the debtor's state court petition was stayed by the debtor's bankruptcy filing.[42]

Appellant does not challenge these findings as clearly erroneous, and does not identify any other evidence in the record which would support a conclusion that the parties engaged in a lengthy course of litigation, or that extensive discovery has occurred.  See Great Western, 110 F.3d at 233.  Moreover, appellant identifies no other prejudice which it would suffer by enforcement of the arbitration provision.  Id.

---

[42]    Memorandum, page 34.

Finally, appellant avers that even if its state-law claims are arbitrable, its claims of fraudulent transfer and issues arising under Article 9 of the U.C.C. should nevertheless be adjudicated by the bankruptcy court because they did not arise until after the alleged breach of the Settlement Agreement.[43]

Appellant's brief does not challenge the bankruptcy court's conclusion that appellant's bankruptcy-related claims are unlikely to succeed on the merits. Moreover, appellant's brief points to nothing specific in the bankruptcy court's decision on this issue which is purportedly in error.[44]

Thus, I am satisfied with the bankruptcy court's assessment of StingFree's Chapter 11 bankruptcy petition and adversary action. Appellant does not challenge as clearly erroneous any of the bankruptcy court's factual findings which

---

[43]     Appellant's brief, page 22.

[44]     At oral argument, appellant contended that the bankruptcy court's analysis regarding the two bankruptcy-related causes of action was flawed. (See N.T. at pages 29-32.) However, instructive Third Circuit precedent holds that, in the appellate context, claims not raised and argued in a moving party's brief are abandoned and waived. See, e.g., Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993); Coney v. NPR, Inc., 2007 WL 2571452, at *2 (E.D.Pa. Aug. 31, 2007)(Strawbridge, M.J.).

The Federal Rules of Bankruptcy Procedure requires that "appellant's brief shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on." Fed.R.Bankr.P. 8010(a)(1)(E). As noted, appellant's brief does not address any argument that the bankruptcy court erred in concluding that appellant's two bankruptcy-related claims were unlikely to succeed on the merits. Moreover, I note that appellant's Statement of Issues on Appeal (Record, Exhibit 4) does not include the issue of whether the bankruptcy court erred in this respect, as required by Rule 8006 of the Federal Rules of Bankruptcy Procedure. Accordingly, I do not consider any such argument herein.

underlie its ultimate factual finding that the petition was filed in bad faith.  For the foregoing reasons, I conclude that the bankruptcy court did not abuse its discretion in dismissing the petition and denying as moot the related motion to approve bidding procedures.

CONCLUSION

For all the foregoing reasons, I deny the Motion of Fonika Ventures, LLC to Intervene and I affirm the February 4, 2009 ruling of the bankruptcy court.